## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **JANE DOE,** § | | |
| § | | |
| **Plaintiff** § | | |
| § | **CIVIL ACTION NO. 4:19-cv-1209** | |
| v. § | | |
| § | **JURY DEMANDED** | |
| **PRAIRIE VIEW A&M UNIVERSITY** § | | |
| § | | |
| **Defendant.** § | | |

### PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND

Plaintiff Jane Doe ("Plaintiff") files this Original Complaint and Jury Demand complaining of Defendant Prairie View A&M University ("Defendant" or "Prairie View A&M"). In support thereof, Plaintiff would show the Court as follows:

### I.
### PRELIMINARY STATEMENT

1.  At all relevant times, Prairie View A&M received federal funding for its academic programs and activities and was subject to the requirements of Title IX of the Education Amendments of 1972, 20 U.S.C. 1681(a) (hereinafter, "Title IX").

2.  Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a).

3.  Title IX is enforceable through an individual's private right of action and allows for the recovery of damages. The United States Supreme Court has held that a school that receives federal funding can be held liable under Title IX for student-on-student harassment. *Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629 (1999). *Davis* held that a complainant may

prevail in a Title IX damages action against a school in cases of student-on-student harassment where the funding recipient is:

> (a) "deliberately indifferent to sexual harassment of which the recipient has actual knowledge," and
>
> (b) "the harassment is so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school."

*Davis*, 526 U.S. at 650.

4. On April 4, 2011, the U.S. Department of Education, Office for Civil Rights issued its "Dear Colleague Letter" to help universities such as Prairie View A&M comply with the requirements of Title IX, to explain that the requirements of Title IX pertaining to sexual harassment also covered sexual violence, and to explain the specific Title IX requirements applicable to sexual violence.

5. On April 29, 2014, the U.S. Department of Education Office for Civil Rights sent out a second Dear Colleague Letter (FAQs) with specific guidance on University compliance with Title IX and sexual harassment/violence.

6. This case arises from Defendant's deliberately indifferent response to reports of student-on-student sexual assault and subsequent sex-based harassment. Specifically, Defendant's failure to promptly and appropriately investigate and respond to Plaintiff's assault furthered sexual harassment and a hostile environment, effectively denying Plaintiff, and other female students, access to educational opportunities. Plaintiff brings this action to redress a hostile educational environment pursuant to Title IX.

## II.
## PARTIES

7.  Plaintiff Jane Doe[1] is an individual who, at the time of the sexual assault complained of herein, was a student attending Prairie View A&M.

8.  Defendant Prairie View A&M University is a public university with its campus located in Prairie View, Waller County, Texas. Defendant may be served through its President, Dr. Ruth J. Simmons at the Office of the President, 700 University Drive, Prairie View, Texas 77446 or by serving its registered agent, Jim Davis, Deputy AG for Civil Litigation, Price Daniel, Sr. Building, 8th Floor, 209 W. 14th Street, Austin, Texas 78701.

## III.
## JURISDICTION AND VENUE

9.  The Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331, which gives district courts original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

10. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), since Defendant resides or resided in this district and the events or omissions giving rise to the claim occurred in this district.

## IV.
## FACTS

11. Plaintiff was a student at Prairie View A&M from the spring of 2016 until February of 2019.

12. On April 3, 2017, Plaintiff was sexually assaulted by a member of the Prairie View A&M men's basketball team in the assailant's off-campus apartment. The apartment itself

---

[1] "Jane Doe" has been substituted for Plaintiff's name for all causes of action brought through this Complaint which would otherwise publish important privacy interests of Plaintiff. Plaintiff intends to file a Motion to Proceed Under Pseudonym, requesting the Court sign an order allowing her to proceed in the above-captioned matter using a pseudonym after a civil action number is assigned to this case.

was located within a student housing community serving only the students attending Prairie View A&M. Further, the assailant's housing was paid for by Prairie View A&M.

13. Plaintiff reported the sexual assault to her mother, who later reported the sexual assault to the head coach and an assistant coach for the Prairie View A&M men's basketball team. Thereafter, Plaintiff reported the sexual assault to the Prairie View A&M University Police Department and gave a preliminary statement regarding the assault. Plaintiff was then taken to Tomball Regional Medical Center for a sexual assault examination.

14. Following initial reports of the sexual assault, Plaintiff reported the assault to Prairie View A&M officials. Plaintiff was interviewed by Prairie View A&M's Student Conduct Officer. Plaintiff provided a detailed written statement regarding her assailant and the assault, including the names of the Prairie View A&M officials who were notified of the assault. Plaintiff was also interviewed by a detective with the Prairie View A&M University Police Department. At least one of these interviews was videotaped. Each time Plaintiff was interviewed, she provided the name of the alleged assailant and painfully recounted the details of her assault. Although Plaintiff fully cooperated with several requests to provide information, Prairie View A&M officials seemingly ceased their investigation and did nothing to ensure the safety and well-being of Plaintiff.

15. As final exams approached in late April 2017, Plaintiff's mother emailed the Texas A&M Chancellor as the over-seer of Prairie View A&M. Plaintiff's mother explained that despite numerous reports being made to various Prairie View A&M officials, the school had essentially done nothing. In fact, Plaintiff's mother pointed out that a hearing was held to determine whether *Plaintiff*, as opposed to the alleged assailant, had somehow violated the Prairie View A&M Student Code of Conduct in connection with the assault.

16. Plaintiff's mother informed the Chancellor that she had learned that the student-athlete was in the United States on a student visa. Plaintiff's mother cited concerns that Prairie View A&M officials were attempting to cover up the assault due the assailant's status as a student-athlete. Plaintiff's mother also informed the Chancellor that a campus wide bulletin regarding Plaintiff's assault had not been released to students or parents, despite the fact that Plaintiff had reported the assault nearly three weeks earlier and the assailant remained on campus. Plaintiff's mother expressed concerns for her daughter's safety, including the fact that Plaintiff was scared to go to one of her classes due to the fact that the assailant also had a class in the same building at the same time.

17. The Chancellor never responded to Plaintiff's mother's email.

18. Subsequently, Plaintiff stopped attending her class due to overwhelming anxiety and fear that she may encounter her assailant. As a result, Plaintiff's grades suffered.

19. In the beginning of May 2017, Plaintiff's mother sent another email to Prairie View A&M's Student Conduct Officer inquiring about Plaintiff's ability to transfer to a different school due to concerns for her daughter's safety and the fear that the assailant would be permitted to return to Prairie View A&M in the fall. Plaintiff's mother informed the Student Conduct Officer that Plaintiff had encountered her assailant on campus on numerous occasions. Plaintiff's mother reiterated that the school had still not issued a campus wide bulletin alerting students and parents of Plaintiff's assault. Plaintiff's mother also expressed frustration that the school had done nothing, citing concerns that the lack of response was attributed to the assailant's status as a student-athlete.

20. A few weeks later, Prairie View A&M officials asked Plaintiff to subject herself to yet another interview, despite the fact that Plaintiff had fully cooperated up until that point and

had already provided her assailant's identity and a complete, detailed account of the assault to numerous university officials. Due to final exams, Plaintiff was unable to participate in another interview.

21. Upon information and belief, Prairie View A&M officials interviewed Plaintiff's assailant who claimed that Plaintiff's allegations were unfounded. Despite having received ample information from Plaintiff and an independent witness by way of a police report, written and videotaped statements and several one-on-one interviews, Prairie View A&M officials ultimately determined that Plaintiff's allegations of sexual assault were unsubstantiated and closed their investigation. Upon information and belief, Prairie View A&M officials made this determination because Plaintiff did not present for another interview.

22. Before the fall semester began, Plaintiff's assailant was indicted for second degree felony sexual assault. During a bail hearing, an investigator for the Waller County District Attorney's office testified that the U.S. Department of Homeland Security was after the assailant because his student-visa had expired and he had overstayed his allotted time in the United States.

23. Upon information and belief, the assailant admitted under oath during the bail hearing that although he is a Nigerian citizen, he indicated that he was a United States citizen on his college admission paperwork. Upon information and belief, the assailant also submitted false documentation in which he misrepresented his age. Specifically, according to some reports, the assailant represented that he was 23 years old, when in fact he was 33 years old. The judge ultimately denied bail and Plaintiff's assailant remained in jail until October 2018 when he was released on bond.

24. Subsequently, Plaintiff's assailant was charged with tampering with governmental school records, a third degree felony. Upon information and belief, this charge stemmed from the

fraudulent documentation and information submitted by assailant to Prairie View A&M. Upon information and belief, Prairie View A&M did not take any steps to ensure the veracity of the assailant's paperwork or the validity of his student visa prior to accepting him as a student and allowing him onto the Prairie View A&M campus.

25. Plaintiff returned to Prairie View A&M in fall 2017 and continued attending school at Prairie View A&M until the end of January 2019.

26. In late January 2019, Plaintiff was on the Prairie View A&M campus when she encountered her assailant. Unbeknownst to Plaintiff, her assailant had been released from jail. Also unbeknownst to Plaintiff was the fact that Prairie View A&M officials had allowed Plaintiff's assailant to re-enroll in the school. No one at Prairie View A&M notified Plaintiff that the assailant was returning to campus.

27. Upon learning that Plaintiff's assailant was present on the Prairie View A&M campus, Plaintiff and her mother met with officials in the Prairie View A&M Student Affairs' office. During the meeting, Prairie View A&M officials confirmed that Plaintiff's assailant had re-enrolled at Prairie View A&M. Prior to Plaintiff's assailant re-enrolling at Prairie View A&M, Plaintiff and Plaintiff's mother learned that Plaintiff's assailant had at least two other complaints filed against him, stemming from incidents of sexual assault which occurred prior to Plaintiff's assault. Plaintiff and Plaintiff's mother informed Prairie View A&M officials of the prior assaults. Upon information and belief, Prairie View A&M were already aware of the prior assaults as they had been reported to school officials.

28. Despite knowledge of at least three separate instances of sexual assault involving Plaintiff's assailant and repeated requests for action by Plaintiff, Prairie View A&M did nothing. Further, after multiple phone calls, in-person meetings and emails, it became clear to Plaintiff

that Prairie View A&M did not actually intend to do anything to ensure Plaintiff's safety and emotional well-being. It also became clear that Prairie View A&M did not intend to provide any resources to Plaintiff or otherwise ensure that Plaintiff would be able to remain on Prairie View A&M's campus without encountering her assailant. Therefore, Plaintiff ultimately decided to withdraw from Prairie View A&M at the end of January 2019, just weeks into the spring semester.

29. Throughout this entire time, Prairie View A&M was clearly on notice of the report that one of their female students, Plaintiff, was raped by another student-athlete.

30. As a result, Prairie View A&M had control over both the offender as well as the context of the ongoing harassment and had the ability to address its effects and prevent its recurrence. Yet, Prairie View A&M did nothing.

31. Prairie View A&M's failure to adequately investigate and respond to Plaintiff's sexual assault combined with the subsequent return of Plaintiff's assailant to the Prairie View A&M campus after having spent nearly a year in jail, and Prairie View A&M's complete inaction in response to numerous inquiries by Plaintiff, created a highly hostile educational environment for Plaintiff on a daily basis.

32. Plaintiff endured significant emotional distress and attended counseling with a private counselor unaffiliated with Prairie View A&M. The highly hostile educational environment and significant emotional distress Plaintiff endured as a result ultimately led to her decision to withdraw from Prairie View A&M.

## V.
## CAUSES OF ACTION

**A.   VIOLATION OF TITLE IX OF THE EDUCATION AMENDMENTS OF 1972, 20 U.S.C. § 1681(A)**

33.    Plaintiff incorporates by reference all preceding facts and allegations set forth above in Paragraphs 1 through 32.

34.    The sex-based harassment articulated in this complaint was so severe, pervasive and objectively offensive that it deprived Plaintiff of access to educational opportunities or benefits provided by the school.

35.    Prairie View A&M created and/or subjected Plaintiff to a hostile educational environment in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a) (Title IX) because:

a) Plaintiff was a member of a protected class;
b) Plaintiff was subjected to sexual harassment in the form of sexual assault by another student-athlete;
c) Plaintiff was subjected to harassment based on her sex; and
d) Plaintiff was subjected to a hostile educational environment created by the Defendant's lack of policies and procedures and failure to properly investigate and/or address the sexual assault and subsequent harassment.

36.    Defendant and its officials had actual knowledge of Plaintiff's sexual assault, Plaintiff's assailant, and the resulting harassment of Plaintiff created by its failure to investigate and discipline Plaintiff's assailant in a timely manner and consistent with federal and state law.

37.    Defendant deliberately chose not to investigate Plaintiff's sexual assault after learning of the assault and the identity of the student-athlete involved.

38.    Defendant's failure to investigate the assault, conduct disciplinary hearings, or contact Plaintiff and offer any assistance or resources was clearly unreasonable. Further, Defendant's affirmative decision to allow Plaintiff's assailant to re-enroll in Prairie View A&M

9

in the spring 2019 semester, despite the fact that he was charged with felony sexual assault and preparing to stand trial, was clearly unreasonable. Moreover, Prairie View A&M's failure to contact Plaintiff to notify her that the assailant had returned to campus or offer any assistance or resources when she made repeated requests for accommodations to ensure her safety and well-being, was clearly unreasonable and ultimately led to Plaintiff withdrawing from the university.

39. Defendant's deliberate indifference to Plaintiff's rape exposed her to continued sexual harassment which was so severe, pervasive, and objectively offensive that it effectively barred her access to meaningful educational opportunities and benefits including academics, athletic programs, and on-campus events and activities.

40. Defendant's failure to promptly and appropriately respond to the alleged sexual harassment resulted in Plaintiff, on the basis of her sex, being excluded from participation in, being denied the benefits of, and being subjected to discrimination in the Defendant's education program in violation of Title IX.

41. Defendant failed to take immediate, effective remedial steps to resolve the complaints of sexual harassment, and instead acted with deliberate indifference towards Plaintiff.

42. Defendant persisted in its actions and inaction even after it had actual knowledge of the harm suffered by Plaintiff.

43. Defendant engaged in a pattern and practice of behavior designed to discourage and dissuade students who had been sexually assaulted from seeking prosecution and protection and from seeking to have sexual assaults from being fully investigated.

44. This policy and/or practice constituted disparate treatment of females and had a disparate impact on female students.

45. Plaintiff has suffered emotional distress and psychological damage, and her character and standing in the community has suffered from the harassment fostered as a direct and proximate result of Defendant's deliberate indifference to their rights under Title IX.

## VI.
## ATTORNEYS FEES

46. As a result of this action, Plaintiff has retained the law firm of Abraham, Watkins, Nichols, Sorrels, Agosto & Aziz to represent her in her claims against Prairie View A&M. Accordingly, Plaintiff seeks attorneys' fees incurred pursuant to Title IX.

## VII.
## JURY DEMAND

47. Plaintiff respectfully demands a jury trial.

## VIII.
## RELIEF REQUESTED

48. For the foregoing reasons, Plaintiff respectfully requests that the Court enter judgment against Defendant consistent with the relief requested herein, and for any and all other relief to which Plaintiff may be justly entitled including actual damages, compensatory damages, court costs, attorneys' fees, and pre- and post-judgment interest.

[*Signature block on next page*]

DATED: April 3, 2019                    Respectfully submitted,

                                                **ABRAHAM, WATKINS, NICHOLS, SORRELS, AGOSTO & AZIZ**

                                                */s/Muhammad S. Aziz*
MUHAMMAD S. AZIZ
Federal ID No. 868540
State Bar No. 24043538
MICHELLE A. CIOLEK
State Bar No. 24082824
Federal ID No. 3030526
800 Commerce Street
Houston, Texas 77002
Telephone: (713) 222-7211
Facsimile: (713) 225-0827
maziz@awtxlaw.com
mciolek@awtxlaw.com

**ATTORNEYS FOR PLAINTIFF**